UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:04CV-42-J

MARILYN FEEMSTER                                                                                    PLAINTIFF

v.

JO ANNE BARNHART
Commissioner of Social Security                                                                DEFENDANT

## MEMORANDUM OPINION

This case is before the Court upon review of plaintiff Marilyn Feemster's objections to Magistrate Judge Goebel's Findings of Fact, Conclusions of Law, and Recommendation that her Social Security application for Title II and Title XVI benefits be denied. After conducting a de novo review of Ms. Feemster's specific written objections, the Court adopts the magistrate's recommendation and the Commissioner's determination is affirmed.

Ms. Feemster filed the subject application for Disability Insurance Benefits ("DIB") on April 24, 2002 and Supplemental Security Income ("SSI") on March 26, 2002, alleging that she became disabled on December 14, 2001 as a result of nerves and anxiety (Tr. 206). She had previously filed applications for both DIB and SSI on September 19, 1996 alleging that she became disabled on March 1, 1996 by arthritis, swelling and numbness in her feet and legs (Tr. 79, 83).[1] The present applications were denied by the state agency and upon reconsideration (Tr. 169-172, 168).

After a hearing on September 18, 2003, Administrative Law Judge James E. Craig ("ALJ") found that Ms. Feemster suffers from depressive and anxiety disorders, impairments that are severe

---

[1] Ms. Feemster's 1996 applications were denied by the state agency initially and upon reconsideration. After a hearing, ALJ Gary Flenner found that she retained the physical capacity to perform a limited range of medium, light and sedentary work (Tr. 161).

but do not meet or medically equal listed impairments (Tr. 34). Additionally, the ALJ found that the previously adjudicated physical impairments of varicose veins, plantar fascitis and heel spurs which had limited Ms. Feemster to a reduced range of medium work are no longer active impairments, and that she no longer has a medically determinable physical impairment (Tr. 34). Thus, the ALJ found Ms. Feemster to retain the residual functional capacity to return to her previous work as a housekeeper, and to perform work at all exertional levels with some mentally relevant limitations (Tr. 39, 41). Ms. Feemster appealed the adverse decision to the Appeals Council, which found no basis for review. Ms. Feemster's appeal to this Court followed.

This Court's review of the Commissioner's findings is limited to determining whether they are supported by substantial evidence, 42 U.S.C. §405(g); Elam ex rel. Golay v. Commissioner, 348 F.3d 124, 125 (6th Cir. 2003) and whether the correct legal standards were applied, Landsaw v. Secretary of HHS, 803 F.2d 211, 213 (6th Cir. 1986). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981); Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the court even if the record might support a contrary conclusion, Smith v. Secretary of HHS, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of

choice within which decision makers can go either way, without interference from the courts, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). It is within the parameters of the substantial evidence rule that this Court addresses and rejects each of Ms. Feemster's objections, which are summarized as follows: (1) the ALJ should have given Ms. Feemster's treating physicians' opinions controlling weight; (2) the ALJ made improper credibility findings and did not properly consider the testimony evidence of her father; (3) the ALJ erred by failing to consider the combined effects of her impairments; and (4) the ALJ and magistrate mis-characterized the hearing testimony by Dr. Wagner.

Ms. Feemster first argues that the ALJ was bound by the opinions of Dr. Joseph and Dr. Igbokwe pursuant to the treating physician rule. Specifically, the records reflect that psychiatrist Dr. Scott Joseph of River Valley Behavioral Health evaluated Ms. Feemster on March 6, 2002, diagnosing her with major depression, severe and recurrent, without psychotic features (Tr. 274-276). He assessed a GAF score of 45, which would indicate serious symptoms affecting social and occupational functioning (Tr. 274-276).

Dr. Igbokwe's treatment records indicate that he has treated Ms. Feemster since at least 1998 for routine health needs, including problems with her legs and feet as well as gynecological issues (Tr. 305-311). On June 4, 2003, Dr. Igbokwe wrote a letter on behalf of Ms. Feemster indicating that he "is aware that she has significant mental issues," but defers any imposition of limitations to the treating psychiatrist and therapist with River Valley Behavioral Health (Tr. 336). Ms. Feemster's objections seem to suggest that Dr. Igbokwe's statements that she has "significant mental issues" and "it is obvious to me that she has some significant mental struggles" were medical opinions that should have been given controlling weight by the ALJ.

For a treating physician's opinion to be accorded controlling weight, it must be well supported by medically acceptable clinical and laboratory diagnostic techniques, 20 C.F.R. §§404.1527(d), 416.927(d) (2004). The only Dr. Igbokwe record applicable to Ms. Feemster's mental condition is the above-referenced letter, the contents of which contains only generalized, conclusory statements regarding her mental status. There is no evidence that Dr. Igbokwe evaluated Ms. Feemster for mental disorders, or that he based his statements upon medically acceptable clinical diagnostic techniques. Because a treating physician's report may be properly rejected by an ALJ if it does not contain any underlying clinical findings, Landsaw v. Secretary of HHS, 803 F.2d 211, 213 (6th Cir. 1986), it was not error for the ALJ to decline to accept the unsupported conclusory statements of Dr. Igbokwe, Hall v. Bowen, 837 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ was also well-within his discretion in refusing to accept the treating source opinion of Dr. Joseph. Specifically, the ALJ found that Dr. Joseph's opinion is not supported by his office and treatment notes, individual counseling notes, or his prescribed treatment (Tr. 37). Dr. Joseph assessed a GAF score of 45, which would indicate serious symptoms affecting social and occupational functioning. The GAF assessment is in direct contrast with Dr. Joseph's multiple findings that Ms. Feemster is alert, oriented, appropriate in affect, not suicidal, homicidal, hearing voices or seeing things (Tr. 37). Despite the onerous GAF assessment of 45, Dr. Joseph consistently found Ms. Feemster's insight, judgment, impulsivity, cognition and memory to be okay, and his only treatment was prescription of Paxil with no recommendation of psychiatric hospitalization (Tr. 37). The ALJ further explains his analysis and rejection of Dr. Joseph's opinions, noting that Dr. Joseph attributed some of Ms. Feemster's mood swings to her need for a hysterectomy due to hormone imbalance (Tr. 37).

It is a well-settled principle that an ALJ is entitled to give less weight to a physician's opinion that is not supported by the evidence of record as a whole, Cutlip v. Secretary of HHS, 25 F.2d 284, 287 (6th Cir. 1994). In the instant case, the ALJ did not give controlling weight to the functional opinion of Dr. Joseph because it was not supported by his office and treatment notes, counseling notes, or the prescribed treatment (Tr. 37). The ALJ has provided sufficient "good reasons" for rejecting the opinion of the treating physician in accordance with the regulatory requirements, 20 C.F.R. §§ 404.1527(d), 416.927(d) (2004), Wilson v. Commissioner, 378 F.3d 541, 545-546 (6th Cir. 2004).

Ms. Feemster next contends that the ALJ erred in not finding her testimony credible, and in failing to properly consider the testimony of her father. It should be noted from the outset that the credibility determinations of an ALJ are entitled to great deference, Walters v. Commissioner, 127 F.3d 525, 531 (6th Cir. 1997). The testimony of each is briefly described within the body of the ALJ's Decision, noting that Ms. Feemster's characterization of anger control problems was also reiterated by Mr. Feemster's testimony that she throws tantrums, "goes to pieces," and "blows up" (Tr. 38). While it is true that the Findings portion of the Decision addresses only the rejection of Ms. Feemster's testimony (and not Mr. Feemster's), it is readily apparent from the paragraphs that follow that the ALJ relied upon the testimony of psychological expert Dr. Wagner to discount the degree of limitations imposed by Ms. Feemster's mental condition (Tr. 38-39).

It is harmless error for the ALJ decision to omit discussion of pertinent evidence if the Court can determine, in light of the record as a whole, that the ALJ's decision is based upon substantial evidence, Heston v. Commisioner, 245 F.3d 528, 535-536 (6th Cir. 2001). Though the ALJ's decision-making process with regard to his credibility findings could have been spelled out more

5

clearly in the Decision, this omission constitutes, at most, harmless error. Thus, the ALJ's credibility determinations with regard to both Ms. Feemster and Mr. Feemster are supported by substantial evidence and must stand.

Ms. Feemster's next assignment of error is that the ALJ failed to consider the combined effects of her impairments, and that he mischaracterized the testimony of Dr. Wagner. While it is unclear the specific impairments to which this objection refers, presumably Ms. Feemster is referencing only the mental impairments found by the ALJ (a depressive disorder and anxiety-related disorder) (Tr. 34), and not the previously found physical impairments which the ALJ deems are no longer active (Tr. 34).

Nonetheless, it is this Court's opinion that the ALJ adequately addressed each of these limitations through the testimony of Dr. Wagner. Specifically, Dr. Wagner testified that Ms. Feemster has a major depressive disorder evaluated under listing 12.04, 20 C.F.R. Part 4, Subpart B, Appendix 1 and a generalized anxiety disorder under listing 12.06 (Tr. 415). Dr. Wagner testified that when rated under the "B"criteria of the Listings, Ms. Feemster has only "mild" restrictions of activities of daily living, "moderate" difficulties maintaining social functioning, and "moderate" difficulties maintaining concentration, persistence or pace in low stress tasks, but rising to "marked" limitation with increased complexity jobs (Tr. 416).

Furthermore, Dr. Wagner testified that there was no evidence that Ms. Feemster had ever suffered an episode of decompensation of any extended duration and there were no signs of "C" criteria under either Listing 12.04 or 12.06 (Tr. 416). Dr. Wagner went on to assess that Ms. Feemster's mental impairments would cause work-related limitations, but would not preclude all work activity (Tr. 416, 417, 418), suggesting that she would be best suited with jobs that require

minimal supervision and minimal contact with supervisors. He further noted that she should not work at complex or fast-paced jobs (Tr. 419-420).

Plaintiff's objection to the ALJ's characterization of Dr. Wagner's testimony is with regard to the difficulties she would encounter if working with a highly critical supervisor (Tr. 418). Plaintiff suggests that this testimony would preclude all work, and mischaracterizes Dr. Wagner's testimony as indicating that she could not withstand any contact with a supervisor. This Court's review of the testimony of Dr. Wagner is consistent with the magistrate's view, which would indicate that minimal interaction with a supervisor who is not overly critical is optimal for Ms. Feemster, "If minimal supervision, not critical supervision, then I would say no, she would be okay." (Tr. 418)

For the foregoing reasons, the Court finds:

1) Plaintiff Marilyn Feemster's objections to the findings and recommendation of the magistrate are denied;

2) The findings and recommendations of the magistrate are adopted; and

3) The Decision denying Social Security benefits is affirmed.

A separate Judgment accompanies this Memorandum Opinion.